IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| CARDSOFT, INC., et al. | § § | |
| v. | § § | Case No. 2:08-CV-98-RSP |
| VERIFONE SYSTEMS, INC., et al. | § | |

## MEMORANDUM ORDER

Before the Court is Plaintiff CardSoft Inc.'s Motion to Exclude Expert Reports, Declarations, and Testimony of Scott M. Nettles (Dkt. No. 284, filed February 17, 2012). The Court finds that the motion should be **GRANTED-IN-PART** and **DENIED-IN-PART**.

## APPLICABLE LAW

An expert witness may provide opinion testimony if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. A trial court is "charged with a 'gatekeeping role,' the objective of which is to ensure that expert testimony admitted into evidence is both reliable and relevant." *Sundance, Inc. v. DeMonte Fabricating Ltd.*, 550 F.3d 1356, 1360 (Fed. Cir. 2008).

## DISCUSSION

Defendants VeriFone, Hypercom, and Ingenico intend to call Dr. Scott M. Nettles as an expert witness at trial. Dr. Nettles will offer his opinion that Defendants do not infringe the patents asserted by CardSoft. CardSoft raises several objections to Dr. Nettles' opinions.

A.    **Opinion Regarding "Virtual Machine" / "Virtual Machine Means"**

CardSoft objects to Dr. Nettles opinion that the word "emulate" in the Court's construction of the terms "virtual machine" or "virtual machine means" requires that the virtual machine means translate instructions into the appropriate native code. Dkt. No. 284 at 4-6. CardSoft points to paragraphs 52 and 64 of Dr. Nettles' report as examplars:

> 52. Mr. Cole's report, in the portion describing the invention, also confirms and supports this understanding. For example, in paragraph 34 he says "As illustrated in Figure 2 of the patent, the virtual processor was an element within a conceptually layered structure that permitted application programs to function on multiple hardware platforms" and Mr. Cole includes Figure 2 as background for his analysis. The important point here is that he confirms that the virtual processor was an element of the layer structure and not the entire structure itself. In paragraph 36 he says: "The virtual machine, in conjunction with the hardware application [sic, abstraction] layer software and hardware driver software, then translated the application program instructions to instructions appropriate to the specific computer hardware," making it clear he understand the HW Driver and HAL to be separate and distinct from the virtual processors. Mr. Cole also made clear that he understands that a virtual machine must translate instructions into the appropriate instructions for the specific computer hardware. This translating is how a virtual machine emulates a hypothetical computer and in so translating/emulating provides the instructions to the actual computer hardware.
>
> * * *
>
> 64. None of the accused systems have any such virtual machine that translates application program instructions and thus none of the accused systems are emulating a hypothetical computer. The remainder of Mr. Cole's report, however, assumes a different meaning of "virtual machine" that contradicts the common industry understanding, the patents, and the Court's Claim Construction ruling, and nowhere for any accused product does he show evidence of any translation of application program instructions. Mr. Cole could not point to such virtual machine on any terminal because all application program instructions are first compiled to the native code of the microprocessor on the terminal and execute directly on the microprocessor without any translating being necessary or possible. Despite his inability to point to such a translation, he nevertheless provides a conclusion that accused systems are "emulating a hypothetical computer" without the facts necessary to back up that conclusion.

Nettles Rebuttal Rep. ¶¶ 52 and 64.

Defendants argue that Dr. Nettles is not offering an opinion that contradicts the Court's claim construction, but is merely rebutting an opinion offered by J. Tipton Cole, CardSoft's expert. Dkt. No. 305 at 6-8. Furthermore, Defendants contend that Dr. Nettles is merely characterizing the Court's construction. *Id.* at 8.

The Court is concerned that the cited testimony may confuse the jury as to the proper construction of the term "virtual machine." In particular, Dr. Nettles' opinion that "Mr. Cole could not point to such virtual machine on any terminal because all application program instructions are first compiled to the native code of the microprocessor on the terminal and execute directly on the microprocessor without any translating being necessary or possible" is similar to an argument raised during claim construction. In rejecting Defendants' proposed construction for the term "virtual machine," the court noted that the message processor and the function processor can be implemented in the native software code of the processor, and therefore translation would not be necessary for the application to execute on the microprocessor. *See* Claim Construction Order, Dkt. No. 251 at 12. Accordingly, testimony that the virtual machine must translate instructions into native code for execution by the processor will be excluded. CardSoft's objection is **SUSTAINED**.

B.  **Opinion Regarding "Emulatable in Different Computers Having Incompatible Hardware or Operating System"**

CardSoft objects to Dr. Nettles' opinion, allegedly offered at his deposition, that the virtual machine means "must be capable of executing programs on 'both' different hardware and different operating systems." Dkt. No. 284 at 6. CardSoft contends that this opinion runs afoul of the Court's construction of the term "emulatable in different computers having incompatible hardware or operating systems." *Id*.

The Court has reviewed the cited deposition testimony, and concludes that the deposition testimony is too ambiguous for the Court to rule on this particular objection. The objection is **OVERRULED** at this time; however CardSoft is free to make an objection at trial.

C.	**Opinion Regarding "Virtual Function Processor" and "Virtual Message Processor"**

CardSoft objects to Dr. Nettles' opinion that the claims require the virtual function processor and the virtual message processor be distinct, and because both limitations are allegedly met by the operating system of the accused devices, there can be no infringement:

> 51. Based on Figure 2 and the discussion in Col 9:55-10:49, we can understand the layers of the system and how they interrelate. The lowest layer 100 is the hardware. Above that is the Virtual Machine (VM), which is composed of three layers, from bottom to top: 101 HW Drivers, 102 HAL, and 103 VM Processors. Above VM Processor layer is the Application layer 104 followed by the Data 112. Several observations are important to make about this structure. First, the Hardware 100, Application 104, and Data 112 layers are separate and distinct from the Virtual machine. Thus, parts of the accused systems that are found in the hardware, the applications, or the data cannot meet any limitations that require a component to be part of the Virtual Machine. Second, within the Virtual Machine 101 102 103, the HW Drivers 101, HAL 102, and VM Processors 103 are separate and distinct from each other and, as noted above, the HW Drivers 101 and HAL 102 are known in the prior art. Also, the HW Drivers 101 include existing BIOSes, OSes, and drivers, while the VM Processors 103 include the Function processor 107 and the Message Processor 105. There are several implications for infringement because of this. *First, because meeting all the limitations require the existence of function and message processors and these are separate and distinct from the OS, accusations of the OS alone cannot lead to all the limitations being met. Further, accusing portions of the OS of being the Function or Message processor also will fail to establish infringement because of the requirement of distinctness.*

Nettles Rebuttal Rep. ¶ 51 (emphasis added). CardSoft contends that Dr. Nettles' "requirement of distinctness" is not supported by the Court's claim construction, and is not proper under the applicable law. Dkt. No. 284 at 8-9.

- 4 -

Defendants respond that CardSoft "confuses the Court's construction of these terms with Dr. Nettles' expert non-infringement analysis applying the Court's construction of these terms." Dkt. No. 305 at 1. Defendants argue that the requirement of distinctness is not a misconception of the Court's claim construction, but it instead factors into the non-infringement analysis. *Id.* In response to CardSoft's allegation that "Dr. Nettles was 'unable to provide any legal basis for his newly-minted "requirement of distinctness"' at his deposition," Defendants cite Dr. Nettles' explanation for the requirement:

> A. *Well, my understanding of the claim is that the -- so if I look at the claim, I see that it calls out a virtual function processor and a virtual message processor and an operating system as specific disparate components*. And, furthermore, the virtual function processor and the virtual message processor are components of the virtual machine means, and that virtual machine means has to be capable of executing programs on different computers having incompatible hardware or operating systems. And so both because the claims call them out as distinct components, and because I can't really imagine a way that this virtual machine means would be emulateable on different operating systems, if it was the operating system, I think that these things have to be distinct.

Dkt No. 305 at 13-14 citing Nettles Depo. at 77:1-16 (emphasis added).

The Court disagrees with Defendants' characterization of Dr. Nettles' opinion. Dr. Nettles' "requirement of distinctness" does not merely arise from the application of the claims to the accused subject matter, but is instead an opinion on the proper scope of the claims. This is clear from the very first sentence of Dr. Nettles' testimony where he explains that the requirement of distinctness comes from his "understanding" of the claims. Claim construction arguments will not be presented to the jury due to the high risk that claim construction arguments create confusion. *Cordis Corp. v. Boston Scientific Corp.*, 561 F.3d 1319, 1337 (Fed. Cir. 2009). Therefore, CardSoft's objection is **SUSTAINED**.

## CONCLUSION

For the foregoing reasons, CardSoft's Motion to Exclude Expert Reports, Declarations, and Testimony of Scott M. Nettles is **GRANTED-IN-PART** and **DENIED-IN-PART**.

**SIGNED this 3rd day of June, 2012.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE