IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| CARDSOFT, INC., et al. | § § | |
| v. | § § | Case No. 2:08-CV-98-RSP |
| VERIFONE SYSTEMS, INC., et al. | § § | |

## MEMORANDUM ORDER

Before the Court is Defendants' Motion to Strike the Expert Reports and to Exclude Opinion Testimony of Mark S. Brown, Plaintiff's Expert on Damages (Dkt. No. 279, filed February 16, 2012). The Court finds

### APPLICABLE LAW

An expert witness may provide opinion testimony if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. A trial court is "charged with a 'gatekeeping role,' the objective of which is to ensure that expert testimony admitted into evidence is both reliable and relevant." *Sundance, Inc. v. DeMonte Fabricating Ltd.*, 550 F.3d 1356, 1360 (Fed. Cir. 2008).

### DISCUSSION

**A.     Entire Market Value Rule**

Defendants object to Mr. Brown's opinions on the grounds that they rely on the entire market value rule even though it is not applicable to this case. Dkt. No. 279 at 6. Defendants argue that Mr. Brown: 1) has failed to apportion the value of Defendants' intellectual property in the accused products, 2) has failed to determine why customers buy the accused products, 3)

does not address the lack of market demand for CardSoft's technology, 4) fails to apportion for the value generated by the unclaimed aspects of the accused products. *Id.* at 6-8.

CardSoft argues that the entire market value rule is properly applied in this case. CardSoft notes that, under Federal Circuit precedent, "the [royalty] base used in a running royalty calculation can always be the value of the entire commercial embodiment, as long as the magnitude of the rate is within an acceptable range (as determined by the evidence)." Dkt. No. 297 at 4, citing *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1338. In a similar vein, CardSoft argues that the payment terminals are the "smallest commercially saleable unit that embodies the claimed invention." Dkt. No. 297 at 5, citing *Cornell Univ. v. Hewlett-Packard Co.*, 609 F. Supp. 2d 279. 287-89 (N.D.N.Y 2009). CardSoft also contends that licenses produced in this litigation support the use of the entire market value rule. In particular, the patent licenses granted by NCR to Verifone and Hypercom both apply a royalty rate against the entire value of the licensee's payment terminals even though the NCR patents only cover a peripheral feature of the payement terminals. Dkt. No. 297 at 7-8. Finally, CardSoft explains how its theory of the case supports the application of the entire market value rule:

> CardSoft's theory in this case is that the technology claimed in the patents-in-suit is essential to the operating systems of Defendants' ePOS payment terminals and that the features provided by the patented invention are significant drivers of sales of the accused devices to merchants.  Indeed, without CardSoft's patented technology, ePOS payment terminal devices would still be far too slow for regular use by retail customers, not to mention that there would be a complete absence of customizable applications such as customer rewards programs and the like. Mr. Brown has confirmed this with CardSoft's technical expert, Mr. Cole.

Dkt. No. 297 at 5 (internal citations omitted).

When a patent covers a single feature of an accused product, the patentee must apportion the value of the accused product between the patented feature and the unpatented features using

reliable and tangible evidence. *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1337 (citing *Garretson v. Clark*, 111 U.S. 120 (1884)).  However, if the patented feature is the "basis for customer demand" for the accused product or "substantially created the value of the components parts," then the entire market value rule permits the patentee to recover damages based upon the entire value of the accused product. *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1549 (Fed. Cir. 1995) (en banc).

In the context of a *Daubert* challenge, the Court's role is determine whether the opinion is relevant and reliable. However, it is not the role of the Court to weigh the evidence or decide disputed issues of fact. Having reviewed the arguments of the parties and the entirety of Mr. Brown's expert report, the Court concludes that Mr. Brown has identified sufficient facts to support the application of the entire market value rule in this case, assuming the jury accepts the underlying facts as true. Defendants' objection is **OVERRULED**.

**B.      License Agreements**

Defendants object to Mr. Brown's reliance on 1) settlement and license agreements between CardSoft and two prior defendants in this case, and 2) the license agreements between NCR and defendants VeriFone and Hypercom. Dkt. No. 279 at 10-14.

**1.      Settlement and License Agreement with Shera and Blue Bamboo**

Defendants argue that Mr. Brown should not rely on the settlement agreements between CardSoft and former defendants Shera International, Ltd. and Blue Bamboo (USA), Inc. because the parties did not clearly agree to a royalty rate, and the agreements were reached six years after the hypothetical negotiation date. Dkt. No. 279 at 10-11.

CardSoft argues that the licenses are to the patents-in-suit and that Mr. Brown accounted for the differences in the relevant time periods and the fact that the licenses resulted from the settlement of the litigation. Dkt. No. 297 at 10.

It appears that Defendants' primary concern with the settlement agreements is that they purport to apply an 8% running royalty rate, and yet the licenses are in fact a paid-up, lump sum royalty license. However, the Court believes that this issue goes more to the weight the jury should assign the licenses, and can be best addressed through cross-examination of Mr. Brown.

## 2. Licenses Granted by NCR to VeriFone and Hypercom

Defendants object to opinions regarding the NCR license agreements on the grounds that Mr. Brown has not shown that they are sufficiently comparable on a technological or economic basis. Dkt. No. 279 at 12-14.

CardSoft argues that Mr. Brown properly relied on Mr. Cole, CardSoft's technical expert, to establish the technological comparability of the NCR licenses. Dkt. No. 297 at 11-12. CardSoft also explains that the licenses are economically comparable, and in particular, support using the entire market value of the accused products as the royalty base. *Id.*

The Court has reviewed the arguments of the parties, and the relevant portions of Mr. Brown's report. The Court concludes that Mr. Brown's analysis properly incorporates the NCR licenses.

Accordingly, Defendants' objections to the use of the license agreements are **OVERRULED**.

## CONCLUSION

Defendants' Motion to Strike the Expert Reports and to Exclude Opinion Testimony of Mark S. Brown, Plaintiff's Expert on Damages is **DENIED**.

**SIGNED this 4th day of June, 2012.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE