IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| CARDSOFT, INC. AND CARDSOFT (ASSIGNMENT FOR THE BENEFIT OF CREDITORS), LLC, | § § § § | |
| Plaintiffs, | § | |
| v. | § | Civil Action No. 2:08-CV-0098 |
| | § | |
| VERIFONE SYSTEMS, INC., ET AL, | § § | |
| Defendants. | § § | |

**DEFENDANT HYPERCOM CORPORATION'S
MOTION FOR NEW TRIAL**

## TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................................. 1
II. FACTUAL BACKGROUND ............................................................................................... 2
III. LEGAL STANDARDS .......................................................................................................... 3
IV. ARGUMENT AND AUTHORITIES .................................................................................... 3
    A. A New Trial Should Be Granted Because the Court Improperly Excluded Expert Testimony of Dr. Scott Nettles. ..................................................................... 3
    B. The Jury's Finding of Infringement of the Virtual Function Processor and Function Processor Instructions Limitations Was Against the Great Weight of the Evidence ............................................................................................... 4
    C. The Jury's Finding of Infringement of the Virtual Message Processor Limitation is Against the Great Weight of the Evidence. .......................................... 6
    D. The Jury's Finding of Infringement of the Message Instruction Means Limitation Was Against the Great Weight of the Evidence. ..................................... 7
        1. Cardsoft Failed to Offer Legally Sufficient Evidence that Hypercom Terminals Have a Message Instruction Means That Performs the Identical Function. .......................................................... 7
        2. Cardsoft Failed to Offer Legally Sufficient Evidence that Hypercom Terminals Have a Message Instruction Means that Has an Identical or Equivalent Structure. ................................................. 8
    E. The Jury's Finding That Hypercom's Terminals Have a Virtual Machine Means That is Emulatable in Different Computers Having Incompatible Hardware or Operating Systems is Against the Great Weight of the Evidence. ................................................................................................................ 10
        1. Cardsoft Failed to Offer Any Evidence That Hypercom Terminals Have a Virtual Machine Means. ................................................................. 10
        2. Cardsoft Failed to Offer Legally Sufficient Evidence, that Hypercom Terminals Have a Virtual Machine Means that Executes Programs. ............................................................................................... 10
        3. In Accusing Operating Systems of Infringement, Cardsoft Failed to Provide Legally Sufficient Evidence That the Alleged Virtual Machine Means on Hypercom Terminals is Capable of Executing Programs on Different Computers Having Incompatible Hardware or Operating Systems. .................................................................................. 12
        4. The Jury's Finding That the Alleged Virtual Machine on Hypercom Terminals is Capable of Running on Different Computers Having Incompatible Hardware is Against the Great Weight of the Evidence ............................................................................................... 12
V. CONCLUSION ................................................................................................................... 14

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Chiuminatta Concrete Concepts v. Cardinal Industries*,
   145 F.3d 1303 (Fed. Cir. 1998)......................................................................................9

*Odetics, Inc. v. Storage Tech. Corp.*,
   185 F.3d 1259 (Fed. Cir. 1999)......................................................................................7

*Unique Concepts, Inc. v. Brown*,
   939 F.2d 1558 (Fed. Cir. 1991)................................................................................5, 10

*Zelinski v. Brunswick Corp.*,
   185 F.3d 1311 (Fed. Cir. 1999)......................................................................................9

## I.     INTRODUCTION

Plaintiffs Cardsoft, Inc. and Cardsoft (Assignment for the Benefit of Creditors), LLC (collectively, "Cardsoft")[1] asserted and the jury found infringement by Hypercom Corporation ("Hypercom") under Claim 11 of U.S. Patent 6,934,945 and Claim 1 of U.S. Patent 7,302,683. Claim 11 of the '945 patent is dependent upon claims 1 and 10 of that patent. Claim 1 of the '945 patent is as follows:

> A communication device which is arranged to process messages for communications, comprising a virtual machine means which includes
>
> > a virtual function processor and function processor instructions for controlling operation of the device, and
> >
> > message induction [sic][2] means including a set of descriptions of message data;
> >
> > a virtual message processor, which is arranged to be called by the function processor and which is arranged to carry out the message handling tasks of assembling the messages, disassembling messages and comparing the messages under the direction of the message instruction means that is arranged to provide directions for operation of the virtual message processor, whereby when a message is required to be handled by the communications device the message processor is called to carry out the message handling task,
> >
> > wherein the virtual machine means is emulatable in different computers having incompatible hardwares or operating systems.

Claim 1 of the '683 patent contains the same limitations.

Following a *Markman* hearing, this Court determined that the "message instruction means" limitation is a "means plus function" limitation subject to § 112, ¶ 6 of the Patent Act and

---

[1] The parties filed recently a stipulation that Cardsoft, Inc. owns no right, title or interest in the patents-in-suit. The Court accepted that stipulation and dismissed all of the claims asserted by and all of the claims asserted against Cardsoft, Inc.

[2] The '683 patent replaced "induction" with "instruction."

1

requires the following: "(1) the function is 'providing directions for operation of the virtual message processor'; and (2) the structure is '13:29-14:2; 15:23-34; Figure 11 and Figure 8, and equivalents thereof."

At trial, Cardsoft's proof of infringement by Hypercom consisted solely of the opinion testimony of J. Tipton Cole, the Hypercom source code Cole cited during his testimony and a few Hypercom documents about which Cole did not testify. Cole testified only in Cardsoft's case-in-chief. Cole did not return to the stand to rebut any of the opinion testimony of Dr. Scott Nettles, Hypercom's expert. Cardsoft did not offer any deposition testimony of any Hypercom personnel. Hypercom chose not to call any of its employees. In short, Cardsoft's case against Hypercom is based just on Cole's testimony.

## II.   FACTUAL BACKGROUND

Cole's opinions that the various claim limitations are found in Hypercom terminals are based on the software associated with the universal serial bus ("USB") port on Hypercom terminals. For example, as evidence of a virtual function processor Cole cited a "USB_EXTR.C" source code file that he testified is associated with a "USB or serial port" on the Hypercom terminals. (T. Tr., June 5, 2012, Morning ("M."), 75.) As a further example, as evidence of a message instruction means, Cole cited certain .h files from the Hypercom hardware directory – USBINPUTREQ and USBOUTPUTREQ – that show how the memory on Hypercom terminals "is organized to receive incoming messages on this USB port." (*Id.*, 77-78)

USB or serial ports are nothing more than sockets on a terminal or other computing device which can be used to connect a cable from a peripheral device such as a modem or printer to the terminal. As Cole testified, "[t]he USB port is something that you might attach a modem to…" (*Id.*, 79) Nothing in the patents-in-suit suggests and Cardsoft has never claimed that Ogilvy invented serial ports.

2

Per Cole's own testimony, the Hypercom software on which he bases his opinion simply activates and operates or uses the USB serial port. For example, when the terminal wants to send an outbound message through the serial port, it sends a command. (*Id.*, 80) Cole never testified that the software he cited actually assembles, disassembles and compares the messages. To the contrary, Cole agreed with Dr. Nettles, Hypercom's expert, that Hypercom's application programs – which Cole did not accuse of being part of the virtual machine means or the virtual message processor – assemble, disassemble and compare the messages as required to process transactions. (*Id.*, 125) Moreover, as Dr. Nettles pointed out, Cole never testified that the .c and .h files he cited are capable of executing programs themselves. As a result, and as related to the specific limitations below, the jury's verdict for Cardsoft, which could only be based on Cole's testimony, is against the great weight of the evidence.

### III. LEGAL STANDARDS

Defendants VeriFone Systems, Inc. and VeriFone, Inc. (collectively, "VeriFone") are also moving for a new trial. VeriFone's motion summarizes the law regarding grounds for new trial and applicable law. (*See* VeriFone Motion for New Trial, pp. 3-4.) VeriFone has also filed a Renewed Motion for Judgment as a Matter of law, which includes a statement regarding: (1) Proof of infringement generally; and (2) proof of infringement of a means plus function limitation. (*See* VeriFone Renewed Motion for Judgment as a Matter of Law, p. 2.) Hypercom hereby adopts those statements as its own and incorporates them into this motion by reference.

### IV. ARGUMENT AND AUTHORITIES

A. A New Trial Should Be Granted Because the Court Improperly Excluded Expert Testimony of Dr. Scott Nettles.

VeriFone has moved for a new trial on the ground that the Court improperly excluded expert testimony of Dr. Nettles. The testimony in question is stated in paragraphs 51, 52 and 64

of Dr. Nettles' report. (Those paragraphs and paragraph 36 of Cole's report, to which Dr. Nettles replied, are attached hereto collectively as Exhibit "A.") The Court improperly excluded the testimony stated in paragraphs 52 and 64 of Dr. Nettles' report. First, the Court erred in striking Dr. Nettles' testimony that the accrued Hypercom terminals do not infringe because they do not have a virtual machine means that translates application program instructions into instructions appropriate to particular microprocessors. The Court improperly excluded that testimony for two reasons. First, the Court relied upon a mischaracterization by Cardsoft of a position taken by Hypercom and the other Defendants during the *Markman* proceedings. Second, the Court based its decision on an erroneous evaluation of the relationship between claim 1 and claims 6 and 6 (and 7 and 8) of the '945 patent.

The Court also improperly excluded Dr. Nettles' testimony - as stated in paragraph 51 of his Rebuttal Report (*see* Exhibit "A") - because Dr. Nettles' testimony was not inconsistent with the Court's claim constructions.

In its Motion for New Trial, VeriFone has set forth the same points in great detail. Rather than repeat all of VeriFone's argument, Hypercom simply adopts and incorporates VeriFone's argument herein by reference.

B.  The Jury's Finding of Infringement of the Virtual Function Processor and Function Processor Instructions Limitations Was Against the Great Weight of the Evidence.

As evidence that Hypercom terminals have a virtual function processor, Cole cited Hypercom's source code files "USB_EXTR.C" and "MDM_EXTR.C" and "other" ".c" source code files. (T. Tr., June 5, 2012 M. 75-76) Cole provided specific testimony only about the "USB_EXTR.C" file. Cole testified that the "USB_EXTR.C" code is "associated with a USB or serial port on the device. (*Id.*, 75). Cole described the function of the "USB_EXTR.C" code by stating that the code "works with the serial port on the . . . payment terminal device." (*Id.*, 75)

4

Cole asserted that "USB_EXTR.C" files and other ".c" files were the virtual function processor and function processor instructions. (*Id.*, 76)

Cole's merger of the virtual function processor limitation and the function processor instructions limitation is simply not permitted as a matter of law, because two different limitations cannot be merged without violating with the all elements rule. *Unique Concepts, Inc. v. Brown*, 939 F.2d 1558 (Fed. Cir. 1991).

This Court should follow the all elements rule as it was applied in *Unique* because the virtual function processor and the function processor instructions disclosed in the patents are two different things. Fig. 2 of the '945 patent identifies the virtual function processor 107 as part of the VM Processors 103, while the function processor instructions 109, 110 are separated in the Application 104. The virtual function processor and function processor instructions are preferably written using two different languages: "In the preferred embodiment, the virtual machine processors 103 are constructed using C and the application is constructed using C++ or Java." ('945 patent at Col. 11, lines 11-13.) Nowhere does the '945 patent describe the virtual function processor and the function processor instruction as being the same thing. Such an interpretation is precluded by the Court's separate constructions of these limitations.

Dr. Nettles testified that the "USB_EXTR.C" file Cole cited is not a virtual function processor and that Cole never provided any opinion on the presence of function processor instructions in Hypercom terminals. (T.Tr., June 6, 2012, A. 100-101) Cole did not re-take the stand and refute Dr. Nettles' testimony. Given that Cole's merger of the virtual function processor and function processor instructions limitations is invalid legally and therefore Cole provided no competent evidence of infringement, and given Dr. Nettles' testimony, the jury's finding of infringement is against the only competent evidence regarding these limitations.

5

    C.    The Jury's Finding of Infringement of the Virtual Message Processor Limitation is Against the Great Weight of the Evidence.

When he was asked to "walk through" his analysis for the virtual message processor, Cole referred back to the "USB_EXTR.C" file that he had identified earlier as the virtual function processor. Cole then said he had continued his analysis with the USB communications. "The USB port," Cole testified, "is something that you might attach a modem to…" Cole went on to state that having started with this "USB_EXTR.C" file from the API interface directory, he had observed that that file uses the data described in a usb.h file "to perform its job." (*Id*., 79)

Then Cole cited to Plaintiffs' Exhibit 108. On page 7 of that exhibit Cole said he found the mechanism through which the virtual function processor "transfers control to the virtual message processor." The mechanism is a dispatch table. Cole added: "So when the system wants to do an output through the USB port, it sends a command through the dispatch table." (*Id*., 80)

When asked whether he had identified the virtual message processor, Cole cited to programmers' comments on page 14 of Plaintiffs' Exhibit 108. Cole said: "[T]his is the code associated with doing what the message processor does. This says that you're going to activate an output request from the application. The output request will complete once the data is sent to the host…" (*Id.*, 83)

What Cole failed to say is that the "USB_EXTR.C" file actually assembles, disassembles and/or compares messages. To the contrary, Cole acknowledged that the "USB_EXTR.C" file merely "activates an output request from the application." (*Id*., 83) The "USB_EXTR.C" file does so by sending a command through the dispatch table. (*Id*., 80) In short, the source code Cole cites is not a virtual message processor because all it does is arrange for messages formulated by the application to be sent out or received. The "USB_EXTR.C" file does not

6

perform the Court's definition of virtual message processor by assembling, disassembling and/or comparing messages.

Dr. Nettles testified that the "USB_EXTR.C" file does not assemble, disassemble or compare messages, indeed that it does not manipulate messages at all. All the file does is to tell the USB port to send the messages. (T.Tr., June 6, 2012, A. 96-97) Moreover, Dr. Nettles testified that he did not find any virtual message processor arranged to be called by the virtual function processor in Hypercom's source code. (*Id.*, 97-98) Cole did not re-take the stand and say that the "USB_EXTR.C" file does assemble, disassemble or compare messages. As a result, given Cole's failure to prove the "USB_EXTR.C" file assembles, disassembles and compares messages, and Dr. Nettles' denial of same, the jury's finding of infringement of the virtual message processor limitation is against the great weight of the evidence.

D.  The Jury's Finding of Infringement of the Message Instruction Means Limitation Was Against the Great Weight of the Evidence.

For a means-plus-function claim limitation, the test for literal infringement is whether the relevant structure in the accused device performs the identical function recited in the claim and is identical or equivalent to the corresponding structure in the specification. *See, e.g., Odetics, Inc. v. Storage Tech. Corp.,* 185 F.3d 1259, 1267 (Fed. Cir. 1999).

1.  Cardsoft Failed to Offer Legally Sufficient Evidence that Hypercom Terminals Have a Message Instruction Means That Performs the Identical Function.

The evidence Cole cited for the presence of a message instruction means consisted solely of source code files with the extension .h that he characterized as "general definitions of data structures." (*Id.*, 76-77) Specifically, Cole cited "something called the USBINPUTREQ and . . . the USBOUTPUTREQ as "data structures" used to send messages. (*Id.*, 77)

7

Cole asserted that "these structures direct the operation of the virtual message processor" (*Id.*), but that is not possible because a data structure is simply not an instruction. In fact, as Dr. Nettles testified, the USBINPUTREQ and USBOUTPUTREQ files are simply part of the universal serial bus in terminals. These files tell where information is to be sent. They do not direct the assembly, disassembly or comparison of messages. (T. Tr., June 6, 2012, A. 99). Cole did not rebut Nettles' testimony on this point.

Cole also asserted that the USBOUTPUTREQ file refers to memory in the terminals. Cole stated: "This is how it's [the memory is] organized to receive – or, I'm sorry, to – to construct, build up and send out outgoing messages." (*Id.*, June 5, 2012, M. 78) Memory, however, cannot and does not actually assemble, disassemble and/or compare messages. Memory is simply where data is stored.

Given Cole's citation of Hypercom software that is not capable of performing the identical function of the message instruction means claimed in the patent and Dr. Nettles' denial that the software Cole cited does so, the jury's finding of infringement of this limitation is against the great weight of the evidence.

2. Cardsoft Failed to Offer Legally Sufficient Evidence that Hypercom Terminals Have a Message Instruction Means that Has an Identical or Equivalent Structure.

When Cardsoft's counsel asked Cole whether he found a message instruction means in Hypercom terminals (*Id.*, 76-79), he did not ask Cole to compare the structure Cole said he found in Hypercom's software to Figure 8 or to Figure 11 of the patents or the related descriptions in the specification. On cross-examination, after Cole had conceded that the structure in the Hypercom terminals was not identical, Cole was asked to identify the differences between the structure in the software in Hypercom terminals and Figure 8 of the patent. Cole's answer was that the Hypercom terminals communicate the same information in a different way. (*Id.*, 153)

8

Cole's testimony is not legally sufficient evidence of equivalent structure. "The proper test is whether the differences between the structure in the accused device and as disclosed in the specification are insubstantial." *Chiuminatta Concrete Concepts v. Cardinal Industries*, 145 F.3d 1303, 1309 (Fed. Cir. 1998). The test that has been used for years to determine "insubstantiality" is whether "the element performs substantially the same function in substantially the same way to obtain substantially the same result as the claim limitation." *Zelinski v. Brunswick Corp.*, 185 F.3d 1311, 1316-7 (Fed. Cir. 1999) (citing *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 608 70 S.Ct. 854 (1950)).

Cole failed to explain the differences he acknowledged exist between the structure in Hypercom's accused terminals and the structure disclosed in the patents. Cole did not even use the word "insubstantial," much less testify that the differences between the accused structure and the patented structure are insubstantial. Cole did not even mention the function, way, result test. In particular, Cole did not analyze the way in which the structure of the message instruction means he asserts can be found in Hypercom terminals works as compared to the way in which the structure described in the patents works. In short, Cole failed to provide the testimony that is required to prove equivalence.

Dr. Nettles testified that the .h file Cole identified as the message instruction means consists of registers that relate to the control of the USB device, and not to formatting of messages. (T.Tr., June 6, 2012, A. 98-99) Dr. Nettles added that USBINPUTREQ and USBOUTPUTREQ code cited by Cole are different structures that describe how one tells the USB device where data is going to be sent. (*Id.*, 99) Dr. Nettles testified that those files do not direct the assembly, disassembly or comparison of messages and therefore are not the message instruction means. (*Id.*, 99-100) Cole did not re-take the stand to deny Dr. Nettles' testimony.

9

Given Cole's failure to show an identical or equivalent structure and Dr. Nettles' denial of same, the jury's finding of infringement of this limitation is against the great weight of the evidence.

E.   The Jury's Finding That Hypercom's Terminals Have a Virtual Machine Means That is Emulatable in Different Computers Having Incompatible Hardware or Operating Systems is Against the Great Weight of the Evidence.

1.   Cardsoft Failed to Offer Any Evidence That Hypercom Terminals Have a Virtual Machine Means.

The Court construed "virtual machine means" as "a computer programmed to emulate a hypothetical computer for applications relating to data."  Cardsoft did not offer any evidence that Hypercom's accused terminals have such a virtual machine means.  Each time that Cole testified about infringement – regarding VeriFone, Hypercom and Ingenico respectively -  he started his analysis with the virtual function processor/function processor instructions limitation.  (*Id*., 52, 75 and 88-89)  Moreover, Cole did not provide any opinion on virtual machine means when he testified about the emulatable limitation.  On redirect examination, Cole argued that he did not have to address the initial "virtual machine means" limitation because that limitation is subsumed in the emulatable limitation.  (*Id.*, 158-161)  That argument violates the all claims rule.  *See Unique Concepts, Inc. v. Brown*, *supra*.

2.   Cardsoft Failed to Offer Legally Sufficient Evidence, that Hypercom Terminals Have a Virtual Machine Means that Executes Programs.

Under the Court's construction of "emulatable in different computers having incompatible hardwares or operating systems," Cardsoft was required to show that Hypercom terminals have a virtual machine means that is "capable of <u>executing programs</u> on different computers having incompatible hardware or operating systems." (Emphasis added)  Cole conceded this on cross-examination:

10

> Q. Now, is the—in this, the virtual machine, according to this claim element, has to be capable of executing programs, correct?
> A. Yes.
> Q: Before we get to different computers or anything else, it has to be capable of executing programs?
> A. You're talking about the emulatable construction. Yes.

(T. Tr., June 5, 2012, A. 13-14).

Yet, Cardsoft's counsel did not even ask Cole whether the alleged virtual machine means on Hypercom terminals actually executes programs. On cross-examination, Cole did assert that the virtual machine means executes programs but he made no effort to explain which portion of the virtual machine means does so or explain how. (T. Tr., June 5, 2012, Morning, 125-126.) Moreover, Cole made no effort to demonstrate that the specific code he identified as the virtual function processor or the specific code he identified as the virtual message processor executes application programs. By Cole's own admission, the Hypercom terminals' alleged "virtual function processor" software only controls general operations of the device. (*Id.*, 39) Moreover, as demonstrated above in Section C above, which addresses the virtual message processor, Cole did not show that Hypercom's terminals' alleged "virtual message processor" software assembles, disassembles or compares messages for communications to and/or from the terminals and banks.

Dr. Scott Nettles, Defendants' technical expert, testified that on Defendants' terminals the application program (and operating system) are compiled to the native code of the particular processor on the terminal and the processors execute the application programs. (T. Tr., June 6, 2012, M. 45-47) Cole did not contest that testimony. To the contrary, as stated above, Cole agreed that it is Hypercom's application programs that assemble, disassemble and compare messages required to process transactions. (T. Tr., June 5, 2012, M. 125)

11

      3.      <u>In Accusing Operating Systems of Infringement, Cardsoft Failed to Provide Legally Sufficient Evidence That the Alleged Virtual Machine Means on Hypercom Terminals is Capable of Executing Programs on Different Computers Having Incompatible Hardware or Operating Systems.</u>

The problems the invention was intended to solve arise from the fact that different payment terminals have different software <u>and</u> hardware arrangements. ('945 patent, col. 2, l. 4-6) Application programs "are not portable between devices having different hardware or operating system architectures and it is necessary to write a program specifically for each type of device." (*Id.*, col. 9, l. 48-51). In other words, different processors (hardware) prevent applications from being portable and different operating systems do also. Dr. Nettles testified that an application designed to run with the Linux operating system on VeriFone's MX terminals would not run on a terminal with a Verix operating system even if the terminals in question used the same microprocessor. (T. Tr., June 6, 2012, M. 89) Cole did not contradict that testimony.

The specification states that "the virtual machine can be implemented on <u>any</u> hardware, <u>BIOS/OS arrangement</u> and therefore facilitates portability of programs." ('945 patent, col. 5, l. 1-3). (Emphasis added.) But Cole did not even try to prove that. (T. Tr., June 5, 2012, M. 132)

      4.      <u>The Jury's Finding That the Alleged Virtual Machine on Hypercom Terminals is Capable of Running on Different Computers Having Incompatible Hardware is Against the Great Weight of the Evidence</u>.

Under the Court's construction of "emulatable in different computers having incompatible hardwares or operating systems," Cardsoft was required to show that Hypercom terminals have a virtual machine means that is "capable of executing programs on different computers having incompatible hardware or operating systems."

Cole never said that – not on direct examination, not on cross examination. On direct, the only testimony Cole gave was that the Hypercom source code he reviewed contained "allowances" for "the differences" in the two different microprocessors Hypercom uses. (*Id.*, 84

12

85) That's it! Again, Cole conceded that it is the application programs "that actually process the credit card transactions – that run the machine to process those transactions." (*Id.*, 125) Cole then argued that the virtual machine means (he never identified - see above) execute the applications programs. (*Id.*, 126) The fallacy in that argument is that Cole agreed that Hypercom compiles its application programs into the native code of its "incompatible" microprocessors. (*Id.*, 127-129) Cole attempted to explain away this inconsistency by stating that his cross-examiner was "implicitly assuming that the only way a virtual machine means can operate is by interpreting code and that's not true." (*Id.*, 127) Cole never explained, however, how the alleged virtual machine means would execute the applications if it did not interpret the code. Moreover, Cole never addressed Ogilvy's testimony that his virtual machine means would also be compiled in the native code of each microprocessor and thus would vary from processor to processor. (T. Tr., June 4, 2012, A. 118).

For all of the above reasons, Cole failed to provide legally sufficient evidence that Hypercom's accused terminals have the disclosed virtual machine means and failed to provide legally sufficient evidence that any alleged virtual machine means in Hypercom terminals is capable of executing the same application program on Hypercom terminals having incompatible microprocessors – or incompatible operating systems. As stated above, Dr. Nettles testified that Hypercom compiles all of its source code – both its operating system source code and its application source code – to particular microprocessors. (T.Tr., June 6, 2012, A. 45-46) Moreover, Dr. Nettles testified that on Hypercom terminals it is only the microprocessors that execute programs. (*Id.*, 58). Cole did not refute that testimony. As a result, the jury's finding that Hypercom terminals have a virtual machine means that is capable of executing programs on

13

terminals with incompatible microprocessors and/or operating systems is simply factually incorrect. Certainly, it is against the great weight of the evidence.

## V. CONCLUSION

For the reasons stated above, Hypercom prays that the Court grant a new trial to Hypercom.

Dated: July 20, 2012

                    Respectfully submitted,

                    /s/ *Robert W. Kantner*
                    Robert W. Kantner
                    Texas State Bar No. 11093900
                    Attorney in Charge
                    JONES DAY
                    2727 North Harwood Street
                    Dallas, Texas 75201-1515
                    Phone: (214) 969-3737
                    Fax: (214) 969-5100
                    E-mail: rwkantner@jonesday.com

                    Sal Lim
                    Appearing *pro hac vice*
                    FEINBERG DAY ALBERTI &
                    THOMPSON LLP
                    401 Florence Street, Suite 200
                    Palo Alto, CA 94301
                    Telephone: (650) 618.4360
                    Facsimile: (650) 618.4368
                    Email:slim@feinday.com

                    Melissa Richards Smith
                    State Bar No. 24001351
                    Gillam & Smith
                    303 South Washington Avenue
                    Marshall, Texas 75670
                    Phone: 903.934.8450
                    Fax: 903.934.9257
                    E-mail: melissa@gillamsmithlaw.com

                    ***ATTORNEYS FOR HYPERCOM***

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). As such, this document was served on all counsel who have consented to electronic service. Local Rule CV-5(a)(3)(A). Pursuant to Fed. R. Civ. P. 5(d) and Local Rule CV-5(e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by U.S. mail or facsimile transmission, on this 20th day of July, 2012.

                                            */s/ Robert W. Kantner*
                                            Robert W. Kantner