**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| **CARDSOFT, INC. AND CARDSOFT** | § | |
| **(ASSIGNMENT FOR THE BENEFIT** | § | |
| **OF CREDITORS), LLC,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| **v.** | § | **Civil Action No. 2:08-CV-0098** |
| | § | |
| **VERIFONE SYSTEMS, INC., ET AL,** | § | |
| | § | |
| **Defendants.** | § | |

**DEFENDANTS VERIFONE SYSTEMS, INC.'S**
**AND VERIFONE, INC.'S MOTION FOR NEW TRIAL**

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................................................. 1

II.    LEGAL STANDARDS ......................................................................................... 2

III.   ARGUMENT AND AUTHORITIES................................................................... 2

    A.    A New Trial Should Be Granted Because the Court Improperly Excluded
        Expert Testimony of Dr. Scott Nettles.................................................................. 2

        1.    The Court Erred in Striking Dr. Nettles' Testimony that the
                Accused Terminals Do Not Infringe Because They Do Not have a
                Virtual Machine Means That Translates Application Program
                Instructions Into Instructions Appropriate to Particular
                Microprocessors.................................................................................... 2

        2.    The Court Erred In Striking Dr. Nettles' Testimony That the
                Virtual Function Processor and Virtual Message Processor are
                Distinct From the Operating System and Distinct from Each Other. ........ 5

    B.    The Jury's Finding of Infringement of the Virtual Function Processor and
        Function Processor Instructions Limitations Was Against the Great
        Weight of the Evidence.......................................................................................... 6

        1.    The Jury's Finding that VeriFone Terminals with Verix and Verix
                V Operating Systems Have a Virtual Function Processor and
                Function Processor Instructions Was Against the Great Weight of
                the Evidence........................................................................................... 6

        2.    The Jury's Finding that VeriFone Terminals with the Verix eVo
                 and Linux Operating Systems Have a Virtual Function Processor
                and Function Processor Instructions Was Against the Great Weight
                of the Evidence. ..................................................................................... 7

    C.    The Jury's Finding that VeriFone Terminals Have a Virtual Message
        Processor is Against the Great Weight of the Evidence. ....................................... 8

        1.    The Jury's Finding that VeriFone Terminals With Verix or Verix V
                Operating Systems Have a Virtual Message Processor is Against
                the Great Weight of the Evidence.......................................................... 8

        2.    The Jury's Finding that VeriFone Terminals with Verix eVo or
                 Linux Operating System Software Have a Virtual Message
                Processor is Against the Great Weight of the Evidence. .......................... 9

    D.    The Jury's Finding of Infringement of the Message Instruction Means
        Limitation Was Against the Great Weight of the Evidence. ............................... 10

        1.    The Jury's Finding that VeriFone Terminals With Verix or Verix V
                 Operating Systems Have the Message Instruction Means is Against
                the Great Weight of the Evidence.......................................................... 10

**TABLE OF CONTENTS**
(continued)

2.  The Jury's Finding that VeriFone Terminals with Verix eVo and Linux Operating Systems Have the Virtual Message Processor is Against the Great Weight of the Evidence. ............................................ 12

E.  The Jury's Finding That VeriFone's Terminals Have a Virtual Machine Means That is Emulatable in Different Computers Having Incompatible Hardware or Operating Systems is Against the Great Weight of the Evidence.................................................................................................... 12

1.  Cardsoft Failed to Offer Any Evidence That VeriFone Terminals Have a Virtual Machine Means. ............................................... 12

2.  Cardsoft Failed to Offer Legally Sufficient Evidence that VeriFone Terminals Have a Virtual Machine Means that Executes Programs ....... 12

3.  In Accusing Operating Systems of Infringement, Cardsoft Failed to Provide Legally Sufficient Evidence That the Alleged Virtual Machine Means on VeriFone Terminals is Capable of Executing Programs on Different Computers Having Incompatible Hardware or Operating Systems............................................................... 13

4.  The Jury's Finding That the Alleged Virtual Machine on VeriFone Terminals is Capable of Running on Different Computers Having Incompatible Hardware is Against the Great Weight of the Evidence.................................................................................. 13

IV.  CONCLUSION............................................................................................ 15

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Acumed LLC v. Stryker Corporation*, 483 F.3d 800 (Fed. Cir. 2007) ...........................................6

*Chiuminatta Concrete Concepts v. Cardinal Industries*,
    145 F.3d 1303 (Fed. Cir. 1998).................................................................................................11

*Fractus, S.A. v. Samsung Electronics Co., Ltd.*, Case No. 6:09-cv-203, Dkt. No. 1113
    (E.D. Tex. June 28, 2012).........................................................................................................2

*PPG Indus. v. Guardian Indus. Corp.*, 156 F.3d 1351 (Fed. Cir. 1998) .......................................6

*Sulzer Textil A.G. v. Picanul N.V.*, 358 F.2d 1356 (Fed. Cir. 2004)..............................................2

*Unique Concepts, Inc. v. Brown*,
    939 F.2d 1558 (Fed. Cir. 1991)...........................................................................................7, 12

*Zelinski v. Brunswick Corp.*,
    185 F.3d 1311 (Fed. Cir. 1999).................................................................................................11

# I.     <u>INTRODUCTION</u>

Plaintiffs Cardsoft, Inc. and Cardsoft (Assignment for the Benefit of Creditors), LLC (collectively, "Cardsoft") asserted and the jury found infringement under Claim 11 of U.S. Patent 6,934,945 and Claim 1 of U.S. Patent 7,302,683.  Claim 11 of the '945 patent is dependent upon claims 1 and 10 of that patent.  Claim 1 of the '945 patent is as follows:

> A communication device which is arranged to process messages for communications, comprising a virtual machine means which includes
>
>> a virtual function processor and function processor instructions for controlling operation of the device, and
>>
>> message induction [sic] means including a set of descriptions of message data;
>>
>> a virtual message processor, which is arranged to be called by the function processor and which is arranged to carry out the message handling tasks of assembling the messages, disassembling messages and comparing the messages under the direction of the message instruction means that is arranged to provide directions for operation of the virtual message processor, whereby when a message is required to be handled by the communications device the message processor is called to carry out the message handling task,
>>
>> wherein the virtual machine means is emulatable in different computers having incompatible hardwares or operating systems.

Claim 1 of the '683 patent contains the same limitations.

This Court determined that the "message instruction means" limitation is a "means plus function" limitation subject to § 112, ¶ 6 of the Patent Act and requires the following:  "(1) the function is 'providing directions for operation of the virtual message processor'; and (2) the structure is '13:29-14:2; 15:23-34; Figure 11 and Figure 8, and equivalents thereof."

## II.   <u>LEGAL STANDARDS</u>

The law of the regional circuit is applied to motions for new trial.  *Sulzer Textil A.G. v. Picanul N.V.*, 358 F.2d 1356, 1363 (Fed. Cir. 2004).  In the Fifth Circuit, "'[a] new trial may be granted, for example, if the district court finds the verdict is against the weight of the evidence, the damages awarded are excessive, the trial was unfair, or prejudicial error was committed in its course.'"  *Fractus, S.A. v. Samsung Electronics Co., Ltd.*, Case No. 6:09-cv-203, Dkt. No. 1113, at 49 (E.D. Tex. June 28, 2012) (Davis, J.) (quoting *Smith v. Transworld Drilling Co.*, 773 F.2d 610, 612-613 (5th Cir. 1985).  Evidentiary rulings challenged in a motion for new trial are reviewed under the law of the regional circuit; however, when a district court rules, as a matter of patent law, that a party is precluded from introducing evidence, Federal Circuit law applies. *Sulzer Textil A.G. v. Picanul N.V.*, *supra*.

In its Renewed Motion for Judgment as a Matter of Law, VeriFone provided a statement on the law of proof of infringement and proof of infringement of a means plus function limitation.  VeriFone incorporates that statement herein by reference.

## III.   <u>ARGUMENT AND AUTHORITIES</u>

A.   <u>A New Trial Should Be Granted Because the Court Improperly Excluded Expert Testimony of Dr. Scott Nettles.</u>

1.   <u>The Court Erred in Striking Dr. Nettles' Testimony that the Accused Terminals Do Not Infringe Because They Do Not Not have a Virtual Machine Means That Translates Application Program Instructions Into Instructions Appropriate to Particular Microprocessors.</u>

In his Report (*see* Exhibit A), Joe Tipton Cole, Cardsoft's technical expert stated that the patented virtual machine means "in conjunction with the hardware application layer software and hardware driver software . . . **translate[s]** the application instructions to instructions appropriate to the specific computer hardware."  (Emphasis added).  Cole was talking about how the

patented virtual machine means allows a computer to emulate a hypothetical computer for applications relating to transport of data.

In Paragraphs 52 and 64 of his Report (*see* Exhibit A), Dr. Nettles *responded to* Cole's statement.  Dr. Nettles opined that none of the accused terminals have such a virtual machine means that translates application program instructions into instructions appropriate to the hardware of that terminal and thus none of the accused terminals emulate a hypothetical computer.

Cardsoft asserted that Dr. Nettles' opinions regarding the "virtual machine means" were based on a claim construction rejected by the Court, namely the Defendants' claim that "the software instructions which control operation of the virtual machine (*i.e.*, the function processor instructions and the message instruction means) must be written in a language that is 'independent of the hardware and independent of the operating systems.'"  (Motion to Strike, pp. 5-6)  Cardsoft added:  "[I]f the instructions for the virtual machine were written in a language that is "independent of the hardware and independent of the operating system, these instructions would have to be translated into the language of the hardware and operating system of the device (the 'native code' of the device) in order for the device to operate."  (*Id.*)

Cardsoft mixed apples and oranges.  In his Report, Cole described the virtual machine means as software that translates the instructions of application programs into instructions appropriate for particular hardware.  That is what a virtual machine does.  On the other hand, the point Cardsoft asserted during the *Markman* proceedings was that the Defendants' tendered definition of virtual machine means was wrong because the "virtual machine means" itself is compiled, *i.e.*, translated, into the native code of the processor on a terminal.  *See* Plaintiffs' Reply Brief Regarding Claim Construction (Docket No. 215) at page 1.

3

In short, during the *Markman* proceedings, Cardsoft argued that the Defendants were wrong in arguing that the virtual machine means had to be translated, *i.e.*, compiled into the native code of the particular microprocessor.  Then, in its Motion to Strike, Cardsoft argued that Dr. Nettles was wrong in arguing that the virtual machine means had to translate the application programs into instructions appropriate for each particular processor.  These are two very different arguments because these are two very different processes.

Cardsoft continued to mischaracterize Defendants' position at the pre-trial conference – when the Court heard argument on Cardsoft's Motion to Strike.  Cardsoft's counsel argued:

> Dr. Nettles has taken the position that emulate, as used by the Court, somehow means that the virtual machine needs to translate the application source code on the fly.  In other words, the application software code cannot be compiled, okay, before it is loaded onto the machine.  It has to be translated on the fly.
>
> That argument was raised at *Markman* and was rejected by Judge Everingham, that the virtual machine needed to translate on the fly . . . .
>
> So, in essence, we have an attempt hereto to reargue *Markman* . . . by arguing the Court's construction and saying the Court's use of the word emulate have had some sort of magical meaning that meant that the virtual machine now had to translate code rather than deal with compiled code in advance.

(Transcript, May 30, 2012, at 14-15)

Given these mischaracterizations of Defendants' arguments and Dr. Nettles' testimony, it is not surprising that this Court, which changed judges between the time of the *Markman* proceedings and trial, was "concerned "that Dr. Nettles testimony might confuse the jury as to the proper construction of the term "virtual machine means" (Order, p. 3); but, the Court did misconstrue Dr. Nettles' testimony when it compared his testimony to the Defendants' position on claim construction.  The Court stated:

4

> In particular, Dr. Nettles' opinion that 'Mr. Cole could not point to such virtual machine on any terminal because all application program instructions are first compiled to the native code or the microprocessor without translating being necessary or possible' is similar to an argument raised during claim construction.  In rejecting Defendants' proposed construction for the terms 'virtual machine,' the court noted that the message processor and the function processor can be implemented in the native software code of the processor, and therefore translation would not be necessary for the application to execute on the microprocessor.

(Order, p. 3)  The Court did accurately recite its Memorandum Opinion and Order on claim construction, namely that the virtual machine means – specifically the message processor and the function processor – can be implemented in the native code of the microprocessor and thus do not have to be expressed in "a hardware/operating system – independent language" as Defendants proposed; but that has nothing to do with whether the virtual machine means translates application program instructions into instructions appropriate for each processor. Therefore, the Court's decision to strike Dr. Nettles' testimony on translation of the application program instructions was erroneous.

The striking of Dr. Nettles' testimony on translation of application program instructions was extraordinarily prejudicial to VeriFone (and Hypercom)  because it denied VeriFone (and Hypercom) an opportunity to assert a lawful basis of non-infringement.

2.   The Court Erred In Striking Dr. Nettles' Testimony That the Virtual Function Processor and Virtual Message Processor are Distinct From the Operating System and Distinct from Each Other.

In Paragraph 51 of his Rebuttal Report (*see* Exhibit A) Dr. Nettles stated:  "First, because meeting all the limitations require the existence of function and message processors and these are separate and distinct from the OS, accusations of the OS claim cannot lead to all the limitations being met.  Further, accusing portions of the OS of being the Function or Message Processor also will fail to establish infringement because of the requirement of distinctness."

5

The Court erred in striking Dr. Nettles' testimony because the testimony was not inconsistent with the Court's claim constructions.  In particular, the Court construed the terms virtual function processor and virtual message processor limitations separately.  Moreover, the Court's ruling conflicted with the emulatable limitation's requirement that the virtual machine means be capable of executing programs on computers with incompatible hardware or operating systems.  *See* Section E-3 below.

Moreover, the Court only construed certain phrases in certain limitations of the asserted claims.  Therefore, Dr. Nettles, like Mr. Cole, was entitled to express an opinion on how one skilled in the art would have understood the claims as a whole.  *Acumed LLC v. Stryker Corporation*, 483 F.3d 800, 806 (Fed. Cir. 2007); *PPG Indus. v. Guardian Indus. Corp.*, 156 F.3d 1351, 1355 (Fed. Cir. 1998)

B.    The Jury's Finding of Infringement of the Virtual Function Processor and Function Processor Instructions Limitations Was Against the Great Weight of the Evidence.

    1.    The Jury's Finding that VeriFone Terminals with Verix and Verix V Operating Systems Have a Virtual Function Processor and Function Processor Instructions Was Against the Great Weight of the Evidence.

As evidence that the VeriFone terminals with the Verix or Verix V operating systems have a virtual function processor, Cole cited to the "main task" in Plaintiffs' Exhibit 155, a Programmer Manual for the Verix V Operating System.  (T. Tr., June 5, 2012, M. 54)  Cole also cited a flow chart of an "Application Idle Engine" on page 41 of Plaintiffs' Exhibit 154, the Verix and Verix V Act 2000 Programmers Manual.  (Id., 56-58).  Dr. Nettles testified that neither the "main task" and the "Application Idle Engine" calls on any alleged virtual message processor as required by the patents.  (T. Tr., June 6, 2012, A. 66-67 and 75).  Moreover, Dr. Nettles testified that Cole had not provided any evidence that Hypercom terminals contain function processor instructions.  (*Id.*, 57)  Cole did not re-take the stand and refute Dr. Nettles' testimony.

Moreover, Cole did not cite any evidence that VeriFone terminals with the Verix or Verix V operating systems have function processor instructions.  Instead, Cole merged the function processor instructions limitation into the virtual function processor limitation.  (*Id.,* 58-59)  Two different limitations cannot be merged without violating with the all elements rule.  *See Unique Concepts, Inc. v. Brown*, 939 F.2d 1558 (Fed. Cir. 1991), which is discussed in detail in VeriFone's Renewed Motion for Judgment as a Matter of Law at pp. 5-6.

2.      The Jury's Finding that VeriFone Terminals with the Verix eVo and Linux Operating Systems Have a Virtual Function Processor and Function Processor Instructions Was Against the Great Weight of the Evidence.

Cole cited Faoro's deposition testimony for the propositions that the Verix, Verix V and Verix eVo operating systems "are effectively one program" and that there is "sufficient commonality" between Verix and Linux operating systems.  (*Id.*)  But Cole offered the "effectively the same program" and "sufficient commonality" testimony when he was cross-examined on the emulatable limitation.  Cole did not link that testimony to the virtual function processor and function processor instructions limitations.  (*Id.*, at 132-137)  Cole could not do so because he did not review the Verix eVo or Linux source code.  (*Id.*, 137)

Paul Rasori testified that the Verix, Verix V and Verix eVo operating systems are not the same program.  Rasori testified that VeriFone developed the Verix V program to accommodate new technological developments and new security standards.  (T. Tr., June 6, 2012, M. 33)  Rasori testified that VeriFone developed Verix V to run on a very different microprocessor than the microprocessor on which Verix had run.  (*Id.*)  Rasori described the change from Verix V to Verix eVo in similar terms.  (*Id.*, 36-37)  Cole did not challenge any of that testimony.

As for the Linux operating system on VeriFone's Mx terminals, Cole conceded that he did know whether Linux is a virtual machine.  (*Id.*, 135)  Cole never testified that the Linux operating system contains a virtual function processor and function processor instructions.

7

Rasori testified that VeriFone adapted Linux, which VeriFone did not develop, to run on its multilane or Mx terminals.  (*Id.*, 35)  Linux provided features that none of the Verix programs provided.  (*Id.*)  Dr. Nettles testified that VeriFone could not and did not make Linux the same program as any of the Verix programs.  (T. Tr., June 6, 2012, A. 87)  Dr. Nettles testified that you could not run the same application program on a terminal with one of the Verix programs and on Mx Terminals with Linux.  (*Id.*, 89)  Cole did not challenge any of that testimony.

In conclusion, the jury's finding of infringement of the virtual function processor and function processor instructions limitations by VeriFone's Verix eVo and Mx (Linux) terminals is against the great weight of the evidence.

C.    The Jury's Finding that VeriFone Terminals Have a Virtual Message Processor is Against the Great Weight of the Evidence.

> 1.    The Jury's Finding that VeriFone Terminals With Verix or Verix V
>       Operating Systems Have a Virtual Message Processor is Against the Great
>       Weight of the Evidence.

Cole cited two examples of virtual message processors in VeriFone terminals with Verix or Verix V operating system software.  Neither assembles, disassembles or compares messages for communications between the terminal and the bank.  First, Cole cited the messenger application on page 20 of Plaintiffs' Exhibit 156, a guide titled "Verix/Verix V Development Suite - Getting Started Guide."  (Id., 65)  The passage to which Cole referred states:  Messenger is an application, which acts as an interface for sending and receiving messages between terminals and a computer running on VeriFone computer application.  Messages sent from VeriCentre can be viewed on the terminal display using the Messenger application.  VeriCentre downloads system updates and applications under the management of the Terminal Manager." Id. (19th page of exhibit)  Such downloads are not messages for communications between a terminal and a bank – which are handled by applications, not operating system software.

Cole also cited the 41st page of Plaintiffs' Exhibit 157, which describes the "Verix Multi-App Conductor ("VMAC").  The VMAC allows two or more independently developed applications to run together on the same Verix platform.  Cole cited the Inter-Task Message Manager ("IMM") as the virtual message processor (id., 66-67); but in fact the manual states that the VMAC, through the IMM, "establishes the six required connections and routes messages between applications using a single, common message format."  Establishing connections and routing messages between applications running inside one terminal on a particular format is not the same as assembling, disassembling and comparing messages between the terminal and the bank – a process that is performed by applications, not operating system software.

Dr. Nettles testified that neither the "main task" or the "Application Idle Engine," which Cole identified as virtual function processor code, called the messenger application or the Inter-Task Message Manager ("IMM") in the Verix Multi-App Conductor, which Cole identified as the virtual message processor.  (T. Tr., June 6, 2012, A. 66-67 and 75)  Moreover, Dr. Nettles testified that neither the messenger application or the IMM assembles, disassembles or compares messages.  (*Id.*, 74)  Cole did not re-take the stand and challenge that testimony.  Given the legal insufficiency of Cole's testimony and Dr. Nettles' factual rebuttal of it, the jury's finding of infringement was against the great weight of the evidence.

2.      The Jury's Finding that VeriFone Terminals with Verix eVo or Linux Operating System Software Have a Virtual Message Processor is Against the Great Weight of the Evidence.

Again, Cole claimed that Faoro testified that the Verix, Verix V and eVo programs are "effectively the same" program and that the Verix and Linux programs have some "commonality" (T. Tr., June 5, 2012. M. 132, 137); but Faoro did not testify and therefore Cole did not testify that VeriFone terminals with either the Verix eVo or the Linux operating system have the same messenger application or IMM which he claimed were virtual message processors

9

in the Verix and Verix V terminals.  In short, Cole never linked any "commonality" among the

Verix terminals or between Verix and Mx (Linux) terminals to any virtual message processor.

D.      The Jury's Finding of Infringement of the Message Instruction Means Limitation Was
        Against the Great Weight of the Evidence.

        1.      The Jury's Finding that VeriFone Terminals With Verix or Verix V
                Operating Systems Have the Message Instruction Means is Against the
                Great Weight of the Evidence.

        Cardsoft failed to offer legally sufficient evidence of infringement of this limitation by

VeriFone terminals with Verix and Verix V operating software for two reasons.  First, Cardsoft

failed to provide any evidence that any message instruction means in those terminals performs

the identical function disclosed in the patents.  Cole cited as evidence of a virtual message

processor in VeriFone terminal manuals for the Verix and Verix V operating systems the

following:  (1) the Messenger application in the Terminal Management Agent; and (2) an

"intermessage manager" or an IMM inside the VMAC.  (Id., 63-67)  Cole cited as evidence of

the message instruction means the following:  (1) the field structure table; and (2) the Message

Interface Engine.  (Id., 60-63)  Cole failed, however, to testify or provide any evidence that the

alleged message instruction means provide direction for operation of the virtual message

processor.  That is, Cole did not testify that either of the field structure table or the Message

Interface Engine provide direction to either of the Messenger Application in the Terminal

Management Agent or the IMM inside the VMAC.

        Second, Cardsoft did not offer any evidence that any message instruction means in any

VeriFone terminals has the identical or an equivalent structure.  Cole conceded that VeriFone

terminals do not contain software with a structure that is identical to either Figure 8 or Figure 11

of the patents-in-suit.  (Id., 147-148 and 151-152)  When Cardsoft's counsel asked Cole whether

he found a message instruction means in VeriFone terminals, he did not ask Cole to compare the

10

structure Cole said he found in VeriFone terminals to Figure 8 or to Figure 11 of the patents or the related descriptions in the specification.  (*Id.*, 59-61)  On cross-examination, Cole was asked to identify the differences between the structure in VeriFone Verix terminals and Figure 8 of the patent.  Cole's answer was that the VeriFone terminals use a different form to communicate the same thing.  (*Id.*, 148-149)  Cole also testified that the information that VeriFone terminals communicate to hosts or authorizing banks is the same.  (*Id.*, 151-152)

Cole's testimony is not legally sufficient evidence of equivalent structure. "The proper test is whether the differences between the structure in the accused device and as disclosed in the specification are insubstantial." *Chiuminatta Concrete Concepts v. Cardinal Industries*, 145 F.3d 1303, 1309 (Fed. Cir. 1998).  The test that has been used for years to determine "insubstantiality" is whether "the element performs substantially the same function in substantially the same way to obtain substantially the same result as the claim limitation." *Zelinski v. Brunswick Corp.*, 185 F.3d 1311, 1316-7 (Fed. Cir. 1999) (citing *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 608 70 S.Ct. 854 (1950)).

Cole failed to explain the differences he acknowledged exist between the structure in VeriFone's accused terminals and the structure disclosed in the patents.  Cole did not even use the word "insubstantial," much less testify that the differences between the accused structure and the patented structure are insubstantial.  Cole did not even mention the function, way, result test. In short, Cole did not provide the required testimony on equivalence.

Once again Dr. Nettles refuted Cole's testimony factually.  Given the legal insufficiency of Cole's testimony, and Dr. Nettles' testimony, the jury's finding of infringement of this limitation is against the weight of the evidence.

11

2.      The Jury's Finding that VeriFone Terminals with Verix eVo and Linux
        Operating Systems Have the Virtual Message Processor is Against the
        Great Weight of the Evidence.

The evidence Cardsoft offered to prove that VeriFone terminals have a message

instruction means related solely to VeriFone's terminals with the Verix and Verix V operating

systems.  In short, Cardsoft presented no evidence of infringement of this limitation by

VeriFone's Verix eVo and Mx (Linux) terminals.

E.      The Jury's Finding That VeriFone's Terminals Have a Virtual Machine Means That is
        Emulatable in Different Computers Having Incompatible Hardware or Operating Systems
        is Against the Great Weight of the Evidence.

        1.      Cardsoft Failed to Offer Any Evidence That VeriFone Terminals Have a
                Virtual Machine Means.

The Court construed "virtual machine means" as "a computer programmed to emulate a

hypothetical computer for applications relating to data."  Cardsoft did not offer any evidence that

VeriFone's accused terminals have such a virtual machine means.  On redirect examination, Cole

argued that he did not have to address the virtual machine means limitation because that

limitation is subsumed in the emulatable limitation.  *Id.*, 158-161)  That argument violates the all

claims rule.  *See Unique Concepts, Inc. v. Brown*, *supra*.

Moreover, Cole did not provide any opinion on virtual machine means when he testified

about the emulatable limitation.  Instead, Cole simply opined that the VeriFone terminals

infringe because they contain operating system software that runs on terminals that have

incompatible hardware, namely different microprocessors.  Cole did not opine that the VeriFone

terminals are computers programmed to emulate a hypothetical computer.

        2.      Cardsoft Failed to Offer Legally Sufficient Evidence that VeriFone
                Terminals Have a Virtual Machine Means that Executes Programs.

Under the Court's construction of "emulatable in different computers having incompatible

hardwares or operating systems," Cardsoft was required to show that VeriFone terminals have a

virtual machine means that is "capable of <u>executing programs</u> on different computers having incompatible hardware or operating systems."  (Emphasis added)  Cole conceded this on cross-examination.  (T. Tr., June 5, 2012, A. 13-14).  Yet, Cardsoft's counsel did not even ask Cole whether the alleged virtual machine means on VeriFone terminals actually executes programs. On cross-examination, Cole did assert that the virtual machine means executes programs but Cole made no effort to demonstrate that the specific code he identified as the virtual function processor or the specific code he identified as the virtual message processor executes application programs.  (T. Tr., June 5, 2012, M. 125-126)

3.  In Accusing Operating Systems of Infringement, Cardsoft Failed to Provide Legally Sufficient Evidence That the Alleged Virtual Machine Means on VeriFone Terminals is Capable of Executing Programs on Different Computers Having Incompatible Hardware or Operating Systems.

The problems the invention was intended to solve arise from the fact that different payment terminals have different software <u>and</u> hardware arrangements.  ('945 patent, col. 2, l. 4-6)  Application programs "are not portable between devices having different hardware or operating system architectures and it is necessary to write a program specifically for each type of device."  (*Id.*, col. 9, l. 48-51).  Dr. Nettles testified that an application designed to run with the Linux operating system on VeriFone's MX terminals would not run on a terminal with a Verix operating system even if the terminals in question used the same microprocessor.  (T. Tr., June 6, 2012, M. 89)  Cole did not contradict that testimony.

The specification states that "the virtual machine can be implemented on <u>any</u> hardware, <u>BIOS/OS arrangement</u> and therefore facilitates portability of programs."  ('945 patent, col. 5, l. 1-3).  (Emphasis added.)  But Cole did not even try to prove that.  (T. Tr., June 5, 2012, M. 132)

4.  The Jury's Finding That the Alleged Virtual Machine on VeriFone Terminals is Capable of Running on Different Computers Having Incompatible Hardware is Against the Great Weight of the Evidence.

13

a.     The Verix, Verix V and Verix eVo Programs are not the Same
Program.

Cole admitted that if the Verix, Verix V and Verix eVo operating system programs were
not the same program, he could not say that VeriFone's Verix terminals infringe, but Cole
provided no evidence to show that the Verix, Verix V and Verix eVo, which were prepared by
different people at different times to run on different microprocessors, are the same program.
(*Id.*, 133)  Cole admitted that he did not compare the Verix and Verix V source code.  (*Id.*, 134)
Cole did not offer any opinion regarding similarities or dissimilarities between those programs or
between either of those programs and Verix eVo.  Cole admitted that Verix, Verix V and Verix
eVo was prepared to run on and compiled to the native code of different processors and that as a
result, there were differences between the programs.  (*Id.*, 134-136)  But again, Cole did not
analyze those differences.  Instead, Cole simply cited deposition testimony by Faoro that the
programs performed similar functions – as do all operating systems.

The Faoro deposition testimony is simply not legally sufficient evidence that those three
operating systems are a single virtual machine means.  Since Verix, Verix V and Verix eVo are
all operating system programs it is not surprising that their fundamental operations are the same.
(T. Tr., June 4, 2012, A. 142)  For example, Verix, Verix V and Verix eVo all detect events such
as card swipes.  (*Id.*, 161)  Nor is it surprising that all three Verix programs contain some basic
components, *e.g.,* device drivers, a kernel, interfaces to applications and functional libraries.
(*Id*., 144-145)  Like any operating system program, Verix, Verix V and Verix eVo manage
hardware services.  (T. Tr., June 6, 2012, Afternoon, 80-81).  The fact is, however, that Verix,
Verix V and Verix eVo are different in large respects because the hardware they manage is
different.  (T. Tr., June 4, 2012, Afternoon, 140, 142).

14

      b.      The Jury's Finding that VeriFone's Mx  Terminals Have a Virtual Machine Means Capable of Executing Programs on Different Computers is Against the Great Weight of the Evidence.

Cole relied on the deposition testimony of David Faoro as support for his opinion that there are sufficient "commonalities" between the Verix and Linux operating systems for those programs to be considered a single virtual machine means.  In fact, while the Verix and Linux programs have the same general components - such as device drivers - they are very different. Faoro testified:  "[I]t would be like comparing Microsoft Windows with…Apple OS…They're just totally night and day different products."  (T. Tr., June 4, 2012, A. 143-144).  Apart from his mis-citation of Faoro's testimony, Cole has no evidence that the Verix and Linux operating system are the same programs.  Cole did not even review the Linux program on Mx terminals. (T. Tr., June 5, 2012, M. 137-138).  Cole did not cite any manuals or other documentation for Linux operating software or any Mx terminal manuals during his testimony.  Finally, Cole conceded that he could not say the Linux operating system is a virtual machine.  (*Id.*, 138).

Dr. Nettles testified that Hypercom compiles all of its source code – both its operating system source code and its application source code – to particular microprocessors.  (T.Tr., June 6, 2012, A. 45-46)  Moreover, Dr. Nettles testified that on Hypercom terminals it is only the microprocessors that execute programs.  (Id., 58).  Cole did not refute that testimony.  As a result, the jury's finding that Hypercom terminals have a virtual machine means that is capable of executing programs on terminals with incompatible microprocessors and/or operating systems is simply factually incorrect.  Certainly, it is against the great weight of the evidence.

## IV.  CONCLUSION

For the reasons stated above, VeriFone prays that the Court grant a new trial to VeriFone.

Dated:  July 20, 2012

Respectfully submitted,

/s/ *Robert W. Kantner*
Robert W. Kantner
Texas State Bar No. 11093900
Attorney in Charge
JONES DAY
2727 North Harwood Street
Dallas, Texas  75201-1515
Phone:  (214) 969-3737
Fax:  (214) 969-5100
E-mail:  rwkantner@jonesday.com

Owen W. Dukelow
Kolisch Hartwell PC
520 S W Yamhill Street, Suite 200
Portland, OR 97204
Email:  owen@khpatent.com

Earl Glenn Thames, Jr.
Potter Minton
P.O. Box 359
Tyler, TX 75710
Email:  glennthames@potterminton.com

***ATTORNEYS FOR VERIFONE SYSTEMS, INC. and VERIFONE, INC.***

16

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a).  As such, this document was served on all counsel who have consented to electronic service.  Local Rule CV-5(a)(3)(A).  Pursuant to Fed. R. Civ. P. 5(d) and Local Rule CV-5(e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by U.S. mail or facsimile transmission, on this 20th day of July, 2012.

*/s/ Robert W. Kantner*
Robert W. Kantner

17